UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOCTOR'S ASSOCIATES, INC., : | | |
|     Plaintiff, : | | CIVIL ACTION NO. |
| : | | 3:18-cv-963 (JCH) |
| v. : | | |
| : | | |
| KARLTON F. KIRKSEY, : | | NOVEMBER 19, 2018 |
|     Defendant. : | | |

**RULING ON PETITION TO COMPEL ARBITRATION (DOC. NO. 1)**

The plaintiff, Doctor's Associates, Inc. ("DAI"), filed a Petition to Compel Arbitration. See generally Petition to Compel Arbitration ("DAI's Petition") (Doc. No. 1). DAI is the franchisor of Subway sandwich shops in the United States. Id. at ¶ 2. The pro se defendant, Karlton F. Kirksey ("Kirksey"), is a Subway franchisee. Memorandum in Opposition to Petition to Compel Arbitration ("Kirksey's Opp'n") (Doc. No. 16) at 1; Amended Complaint for Damages and Declaratory Relief, Kirksey's Opp'n ("Kirksey's Am. Compl.") (Doc. No. 16) at ¶ 2.[1] On May 31, 2018, Kirksey filed suit against DAI in Louisiana state court, which DAI later removed to the United States District Court for the Eastern District of Louisiana (the "Louisiana Lawsuit"). DAI's Petition at ¶¶ 15, 17; Kirksey's Am. Compl. at ¶¶ 12, 14. Pursuant to section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, DAI moves to compel arbitration of the claims raised by Kirksey in the Louisiana Lawsuit. DAI's Petition at ¶ 20.

---

[1] Kirksey did not file an Opposition brief to DAI's Petition to Compel Arbitration. Instead, he docketed the Amended Complaint that he filed as part of his Louisiana Lawsuit in the United States District Court for the Eastern District of Louisiana. For the reasons discussed below, see, infra, at 4–5, the court treats Kirksey's Amended Complaint as his brief in opposition to DAI's Petition to Compel Arbitration.

1

For the reasons stated below, DAI's Petition to Compel Arbitration is granted so that the arbitrator may decide, in the first instance, whether the claims raised in the Louisiana Lawsuit are arbitrable.

I.  **FACTUAL BACKGROUND**

DAI, a Florida corporation with its principal place of business in Connecticut, is the franchisor of Subway sandwich shops. See DAI's Petition at ¶ 2; Kirksey's Am. Compl. at ¶ 38. Kirksey is a resident of Louisiana. DAI's Petition at ¶ 3; Kirksey's Am. Compl. at ¶ 38.

On or about February 5, 2004, DAI and Kirksey entered into a written contract, Franchise Agreement #33426 (the "Franchise Agreement"), allowing Kirksey to operate a Subway restaurant in Louisiana. DAI's Petition at ¶ 6; Kirksey's Am. Compl. at ¶ 2; Exhibit A, DAI's Petition ("Franchise Agreement") (Doc. No. 1). Paragraph 10 of the Franchise Agreement is an arbitration clause, which provides in relevant part:

> a. Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration. The arbitration shall be administered by an arbitration agency, such as the American Arbitration Association ("AAA") or the American Dispute Resolution Center, in accordance with its administrative rules including, as applicable, the Commercial Rules of the AAA and under the Expedited Procedures of such rules or under the Optional Rules For Emergency Measures of Protection of the AAA . . . . The parties agree that Bridgeport, Connecticut shall be the site for all hearings held under this Paragraph 10 . . . .
>
> . . .
>
> c. You may only seek damages or any remedy under law or equity for any arbitrable claim against us or our successors or assigns. You agree that our Affiliates, shareholders, directors, officers, employees, agents and representatives, and their affiliates shall not be liable nor named as a party in any arbitration or litigation proceeding commenced by you

2

> where the claim arises out of or relates to this Agreement. You further agree that the foregoing parties are intended beneficiaries of the arbitration clause; and that all claims against them that arise out of or relate to this Agreement must be resolved with us through arbitration.
>
> . . .
>
> e. Any disputes concerning the enforceability or scope of the arbitration clause shall be resolved pursuant to the Federal Arbitration Act, 9 U.S.C. § et. seq. ("FAA"), and the parties agree that the FAA preempts any state law restrictions (including the site of the arbitration) on the enforcement of the arbitration clause in this Agreement. If, prior to an Arbitrator's final decision, either we or you commence an action in any court of a claim that arises out of or relates to this Agreement (except for the purpose of enforcing the arbitration clause or as otherwise permitted by this Agreement), that party will be responsible for the other parties' expenses of enforcing the arbitration clause, including court costs, arbitration filing fees and other costs and attorney's fees.

Franchise Agreement at ¶ 10.

On September 28, 2016, DAI notified Kirksey that he was in default of the Franchise Agreement. DAI's Petition at ¶ 10; Kirksey's Am. Compl. at ¶ 5. On January 6, 2017, DAI initiated arbitration proceedings against Kirksey, which resulted in Kirksey and DAI entering into an Interim Order. DAI's Petition at ¶¶ 10, 11; Kirksey's Am. Compl. at ¶¶ 6, 7. On August 7, 2017, Kirksey and DAI again engaged in arbitration and entered into a Second Interim Order. DAI's Petition at ¶ 12; Kirksey's Am. Compl. at ¶¶ 8, 9. In substance, both Interim Orders provided that DAI would not seek to terminate Kirksey's Franchise Agreement if Kirksey satisfied certain conditions. DAI's Petition at ¶ 12; Kirksey's Am. Compl. at ¶¶ 7, 10.

On March 21, 2018, DAI notified Kirksey that he was in breach of the Second Interim Order and that DAI would initiate arbitration proceedings against Kirksey to

terminate Kirksey as a Subway franchisee.  DAI's Petition at ¶ 13; Kirksey's Am. Compl. at ¶ 11.  The arbitration hearing was scheduled for June 1, 2018, in Bridgeport, Connecticut (the "June Arbitration").  DAI's Petition at ¶ 14.

On May 31, 2018, Kirksey filed suit against DAI in Louisiana state court (the "Louisiana Lawsuit"), seeking to enjoin the June Arbitration from being held.  Verified Petition for a Temporary Restraining Order, Preliminary and Permanent Injunction, Exhibit B, DAI's Petition (Doc. No. 1).  That same day, the Louisiana state court issued a Temporary Restraining Order staying the June Arbitration and ordering DAI to show cause why a preliminary injunction in the form and substance of the Temporary Restraining Order should not issue.  Order, Exhibit C, DAI's Petition (Doc. No. 1).

DAI subsequently removed the Louisiana Lawsuit to the United States District Court for the Eastern District of Louisiana.  DAI's Petition at ¶ 17; Kirksey's Am. Compl. at ¶ 14.  On June 25, 2018, Kirksey filed an Amended Complaint in federal district court, in which he seeks, inter alia, a declaration that the arbitration provisions in the Franchise Agreement are unenforceable under Louisiana law, as well as actual damages, punitive damages, and attorneys' fees.  Kirksey's Am. Compl. at ¶ 145.

On June 8, 2018, DAI filed in this court a Petition to Compel Arbitration of Kirksey's claims in the Louisiana Lawsuit.  See generally DAI's Petition.  Although Kirksey was represented by counsel in the Louisiana Lawsuit, he is a pro se litigant in the proceeding before this court.  See Kirksey's Opp'n at 1.  In response to DAI's Petition to Compel Arbitration, Kirksey attached the Amended Complaint that he filed in Louisiana federal court.  Id.  Kirksey represents that the Amended Complaint, which was drafted by his attorney in the Louisiana Lawsuit, contains his "substantive

arguments" in opposition to DAI's Petition to Compel Arbitration.  Id.  Having reviewed Kirksey's submissions, the court concludes that his Amended Complaint does, in fact, address arguments made by DAI in favor of arbitration.  The court will therefore treat Kirksey's Amended Complaint as his brief in opposition to DAI's Petition to Compel Arbitration.

## II. LEGAL STANDARD

The Federal Arbitration Act (the "FAA") provides that "a written provision in a contract to settle by arbitration a controversy thereafter arising out of such contract shall be valid, irrevocable, and enforceable."  Meyer v. Uber Techs., Inc., 868 F.3d 66, 73 (2d Cir. 2017) (quoting 9 U.S.C. § 2) (internal quotation marks and alterations omitted).  "The FAA's primary purpose is to ensure that private agreements to arbitrate are enforced according to their terms."  In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2011) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ., 489 U.S. 468, 479 (1989)) (internal alterations omitted).  While "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal quotation marks omitted), courts are required to "construe arbitration clauses as broadly as possible," Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995) internal quotation marks omitted), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).  Thus, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d at 128 (internal quotation marks omitted).

In deciding motions to compel arbitration, courts in this Circuit apply a "standard similar to that applicable for a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). Thus, "the court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." Meyer, 868 F.3d at 74 (internal quotation marks, citations, and alterations omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). However, "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." Nicosia, 834 F.3d at 229 (internal quotation marks omitted).

## III.   DISCUSSION

Kirksey argues that the Louisiana Lawsuit is not arbitrable because the suit seeks to invalidate the Franchise Agreement's arbitration provisions. Kirksey's Am. Compl. at ¶¶ 22–24. In particular, the Louisiana Lawsuit alleges that the forum selection clause in the arbitration provisions is invalid and unenforceable under Louisiana law. Id. at ¶¶ 22, 106. It also alleges that "the arbitration clause lacks mutuality to such an extent that it is unenforceable." Id. at ¶¶ 22, 84. Kirksey contends

that the court, rather than the arbitrator, must decide these threshold questions of whether the parties entered into a valid arbitration agreement. Id. at ¶¶ 19–24.

DAI, on the other hand, argues that the Franchise Agreement's delegation provision clearly and unmistakably delegates questions regarding the validity and enforceability of the arbitration provision to the arbitrator. See Reply in Further Support of Petition to Compel Arbitration ("DAI's Reply") (Doc. No. 17) at 3. Because Kirksey does not specifically challenge the validity of the Franchise Agreement's delegation provision, DAI argues that the court must enforce the delegation provision and, accordingly, compel arbitration of the threshold questions regarding the validity and enforceability of the arbitration provision. See id. at 3–6.

Ordinarily, it is the role of the district court to determine whether a dispute is arbitrable based on "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d at 128. However, the threshold question of whether a dispute is arbitrable must be referred to the arbitrator where "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005) (emphasis in the original); see also VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P., 717 F.3d 322, 325 (2d Cir. 2013) ("[Q]uestions of arbitrability are to be sent to arbitration if and only if the parties clearly and unmistakably expressed their intention to do so."). As the Supreme Court explained in Rent-A-Center, "parties can agree to arbitrate 'gateway' questions of

7

'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," by including a so-called "delegation provision" in their contract. Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68–69 (2010). Because "[a delegation provision] is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, [ ] the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 70.

Thus, "[a]s a matter of substantive federal arbitration law," courts must treat a delegation provision as severable from "the remainder of the contract" in which it appears, just as they would do with any other arbitration provision. Id. at 70–72. As Rent-A-Center made clear, "[a]pplication of the severability rule does not depend on the substance of the remainder of the contract." Id. at 72. As a result, even where a delegation provision appears in a contract that contains other arbitration clauses, the delegation provision is severable from all other provisions in the contract, including from the other arbitration clauses. Id. at 71–72.

The practical consequence of applying the severability rule to delegation provisions is that "a party's challenge to [the validity of] another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing" the delegation provision. Id. at 70, 72. Instead, just as with any other arbitration clause, courts must "apply the [delegation] clause to all disputes within its scope unless [1] the validity challenge is to the [delegation] clause itself or [2] the party disputes the formation of the contract." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 298–99 (2010). Put differently, there are only two types of challenges to arbitration that cannot be delegated to the arbitrator through a delegation clause.

8

First, courts, not arbitrators, must decide challenges directed specifically to the validity of the delegation provision itself. See Rent-A-Ctr., 561 U.S. at 71, 72. Because "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration," AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648–49 (1986), the court may not compel arbitration of arbitrability issues without first addressing challenges to the validity of the delegation provision, Rent-A-Ctr., 561 U.S. at 71, 72. To be clear, however, "the basis of challenge [must] be directed specifically to the [the delegation provision] before the court will intervene." Id. at 71. A party cannot avoid arbitration by arguing that the contract's arbitration provisions are generally invalid, even where a challenge to the delegation clause is implicit in the party's claim that the entire agreement to arbitrate is invalid. See id. at 72 (finding that the arbitrator must decide the respondent's claims that the arbitration agreement was unconscionable because such claims were not directed specifically to the agreement's delegation provision); Pingel v. Gen. Elec. Co., No. 3:14-CV-00632 CSH, 2014 WL 7334588, at *6 (D. Conn. Dec. 19, 2014) (holding that, under Rent-A-Center, a claim that the entire agreement to arbitrate is procedurally unconscionable must be submitted to the arbitrator under the agreement's delegation provision).

Second, it is the role of the court, not the arbitrator, to resolve challenges to "the very existence of the contract embodying the arbitration clause." Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir. 2002) (internal quotation marks omitted). The Supreme Court has expressly distinguished the issue of a contract's "validity" – which can be delegated to the arbitrator through a delegation clause, see Rent-A-Ctr.,

561 U.S. at 72 – from the issue of a contract's "formation," which must be decided by the court, see Granite Rock, 651 U.S. 299. See also Rent-A-Ctr., 561 U.S. at 70 n.2 ("The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded.'"). Issues of contract validity include, inter alia, disputes over whether the contract containing the arbitration clause was unconscionable, see Rent-A-Ctr., 561 U.S. at 72, fraudulently induced, or rendered invalid by the illegality of one of its provisions, see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444, 446 (2006). In contrast, issues of contract formation include, inter alia, disputes over "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." Buckeye Check Cashing, 546 U.S. at 444 n.1 (internal citations omitted). While the Second Circuit has long recognized the exception to arbitration for disputes over "whether a contract was ever made," it has repeatedly stressed that this exception is a "limited" one. Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 61 (2d Cir. 2012); see also Dedon GmbH v. Janus et Cie, 411 F. App'x 361, 363 (2d Cir. 2011) ("Granite Rock reconfirms this circuit's well-established precedent that where a party challenges the very existence of the contract containing an arbitration clause, a court cannot compel arbitration without first resolving the issue of the contract's existence."); Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 68 (2d Cir. 2005) (noting that the Second Circuit rule in Sphere Drake "protect[s] parties from arbitration only in those narrowly-limited circumstances where the very existence of a contract is in doubt.").

In this case, DAI and Kirksey have clearly and unmistakably agreed to send questions of arbitrability to the arbitrator. The Franchise Agreement provides that "[t]he arbitration shall be administered by an arbitration agency, such as the American Arbitration Association ("AAA") or the American Dispute Resolution Center, in accordance with its administrative rules[.]" Franchise Agreement at ¶ 10(a). Both the AAA and the ADRC rules explicitly empower the arbitrator to determine the scope, existence, and validity of the Franchise Agreement's arbitration clause. See AAA Commercial Rule 7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); ADRC Commercial Rule 4 ("The arbitrator(s) has the authority to rule on his or her own jurisdiction including any questions concerning the existence of or the scope or validity of the arbitration agreement."). The Second Circuit has held that, when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp., 398 F.3d at 208.

Furthermore, paragraph 10(e) of the Franchise Agreement provides that "[a]ny disputes concerning the enforceability or scope of the arbitration clause shall be resolved pursuant to the Federal Arbitration Act[.]" As this court has found in several prior cases involving identical delegation provisions, such language constitutes clear and unmistakable evidence that the parties agreed to delegate questions of arbitrability to the arbitrator. See, e.g., Doctor's Assocs., Inc. v. El Turk, No. 3:17-CV-2019 (JCH), 2018 WL 3238701, at *9 (D. Conn. Feb. 28, 2018); Doctor's Assocs., Inc. v.

11

Rahimzadeh, No. 3:17-CV-2126 (JCH), 2018 WL 1704757, at *4 (D. Conn. Apr. 9, 2018); Doctor's Assocs., Inc. v. Repins, No. 17-CV-323 (JCH), 2018 WL 513722, at *6 (D. Conn. Jan. 22, 2018).  Thus, in light of this language and the incorporation of the AAA and ADRC rules, the court finds clear and unmistakable evidence that the Franchise Agreement delegates disputes over the scope, enforceability, and validity of the Franchise Agreement's arbitration clause to the arbitrator.

Notwithstanding this delegation provision, Kirksey argues that the Louisiana Lawsuit is not arbitrable because it addresses "threshold issues" of arbitrability.  See Kirksey's Am. Compl. at ¶¶ 19–24.  Specifically, Kirksey cites to Rent-A-Center for the proposition that, while the arbitrator must decide validity challenges directed generally to a contract that contains an arbitration clause, the court must decide challenges directed specifically to that contract's arbitration clause.  See id. at ¶¶ 20–23.  Based on this reading of Rent-A-Center, Kirksey reasons that the Louisiana Lawsuit must be resolved by the court, not the arbitrator, because it attacks the validity of the Franchise Agreement's arbitration provisions, not the validity of the Franchise Agreement as a whole.  See id. at ¶¶ 22–24.

Kirksey misunderstands the holding in Rent-A-Center.  It is true that, if the Franchise Agreement did not contain a delegation provision, the court would be required to decide challenges directed specifically to the Franchise Agreement's arbitration clause.  See Rent-A-Ctr., 561 U.S. at 70–71.  However, when the agreement contains a delegation provision, Rent-A-Center instructs that the arbitrator must decide all validity challenges to that agreement's arbitration provisions, except for those directed specifically and expressly towards the delegation provision itself.  See, supra,

at 9.  If Kirksey were pro se when he filed the Amended Complaint, the court might have considered interpreting the Amended Complaint's citation to Rent-A-Center as an attempt to raise a specific challenge to the Franchise Agreement's delegation provision. See Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000) ("[C]ourts must construe pro se pleadings broadly, and interpret them to raise the strongest arguments that they suggest.") (internal quotation marks omitted).  The court notes, however, that the Amended Complaint was drafted by Kirksey's attorney in the Louisiana Lawsuit. Moreover, notwithstanding the Amended Complaint's citations to Rent-A-Center, none of Kirksey's challenges to arbitration are directed specifically to the Agreement's delegation provision.  Instead, the Louisiana Lawsuit challenges the validity of (1) the arbitration provision's forum selection clause on the grounds that it is unenforceable under Louisiana law, and (2) the arbitration provision in its entirety on the grounds that it lacks mutuality to such an extent that it is unenforceable.  See, supra, at 6–7.  Although Kirksey's argument that the entire arbitration agreement is invalid implicitly contains a challenge to the delegation clause, it is not sufficiently targeted to the delegation clause to avoid arbitration under Rent-A-Center.  See, supra, at 7–9.

    Nor does Kirksey challenge the very existence of the Franchise Agreement.  He does not, for example, dispute that he entered into the Franchise Agreement with DAI or that he operates a Subway restaurant pursuant to that Agreement.  See Kirksey's Am. Compl. at ¶ 38 ("Kirksey executed the Franchise Agreement in Louisiana for a franchise located in Louisiana after negotiating with and with the assistance of . . . DAI's development agent in Louisiana[.]").  In fact, he expressly acknowledges that "[his] relationship with DAI is governed by a Franchise Agreement," id. at ¶ 127, and even

13

seeks damages on the basis of DAI's move to terminate that Agreement without good cause, see id. at ¶¶ 135, 145. Moreover, Kirksey takes pains to note that the Louisiana Lawsuit does not "seek to invalidate the Franchise Agreement as a whole; rather, it seeks to invalidate the arbitration clause itself." Id. at ¶ 23. In accordance with this representation, all of Kirksey's challenges to arbitration are directed to the Franchise Agreement's arbitration clause, not to the Franchise Agreement in its entirety. See, e.g., id. at ¶¶ 84, 105, 107.

Therefore, while Kirksey attempts to draw comparisons between his suit and the suit at issue in Alemayehu, see id. at ¶ 70, the two are wholly distinguishable. At issue in Alemayehu was whether an application to become a Subway franchisee, which itself contained an arbitration clause, created a contract between DAI and Alemayehu. See Doctor's Assocs., Inc. v. Alemayehu, 321 F. Supp. 3d 305, 307–08 (D. Conn. 2018) ("[T]he dispute before the court is whether the Franchise Application is a binding contract[.]"). In other words, Alemayehu involved the "narrowly-limited circumstances where the very existence of a contract is in doubt." Denney, 412 F.3d at 68. Here, in contrast, there is no issue of fact as to "whether any agreement between [DAI and Kirksey] was ever concluded." Rent-A-Ctr., 561 U.S. at 70 n.2 (internal quotation marks omitted).

Having determined that the arbitrability of Kirksey's claims is a question for the arbitrator, the court must compel arbitration pursuant to the Franchise Agreement's delegation provision. As the Supreme Court has explained, "the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration

14

agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). Therefore, the court compels arbitration as to the arbitrability of Kirksey's claims.

## IV. CONCLUSION

For the foregoing reasons, DAI's Petition to Compel Arbitration (Doc. No. 1) is **GRANTED**. Kirksey is ordered to submit to arbitration the claims that he raised or could have raised against DAI so that the arbitrator may decide, in the first instance, whether such claims are arbitrable. The Clerk is directed to close the case.

**SO ORDERED.**

Dated this 19th day of November 2018 at New Haven, Connecticut.

/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge